Kenneth D. ENGLAND and Connie J. England, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 3220.

United States District Court
S. D. Illinois, S. D.

Feb. 27, 1964.

Gillespie, Burke & Gillespie, Springfield, Ill., for plaintiff.

Edward R. Phelps, U. S. Atty., Springfield, Ill., Leonard M. Goldberg, Dept. of Justice, Washington, D. C., for defendant.

POOS, District Judge.

This is an action for a refund of federal income taxes for the year 1960 in the amount of $103.00 plus interest, pursuant to Title 28, Section 1346(a) (1) of the United States Code, and Section 7422 of the Internal Revenue Code of 1954. The Plaintiff taxpayer was permanently transferred by his employer from Kansas City, Missouri to Springfield, Illinois and preceded his family by six weeks, during which time he incurred certain living expenses, being unable to procure permanent living accommodations at an earlier date. These costs were reimbursed by his employer, Aetna Casualty and Surety Company and not reported as income by the taxpayers. The Defendant assessed a deficiency which was paid, and a claim for refund filed.

Plaintiffs contend that the reimbursement made to the taxpayer, Kenneth England, was for extraordinary business expenses required and incurred on behalf of his employer and not income, or in the alternate that the expenses in question were deductible as ordinary and necessary business expenses. The Government contends that the reimbursement constitutes taxable income.

The Plaintiff taxpayers, Kenneth D. and Connie J. England, husband and wife, were employed by Aetna Casualty & Surety Company; he, as an assistant chief auditor for a period of seven years, and she, as a clerk in the Kansas City, Missouri office. They had resided there for a period of seven years in a mortgaged home owned by them. The wife's salary was $4,200.00 annually. On May 19, 1960 an opening developed in the Springfield, Illinois office of the Aetna which the husband was qualified to fill. The General Manager of the Kansas City office requested him to transfer to Springfield. This transfer was not solicited by the husband. He had reasons to believe that he was in line to succeed to the chief auditor's position at the Kansas City office, if a vacancy occurred. Neither he nor his wife was desirous of making the change. He was asked to report to Springfield on June 1st, but on his request was allowed some additional time. The husband, in fact, arrived in Springfield on June 19, 1960. At

the time of transfer, his salary was increased $750.00, $250.00 of which was a merit raise. No arrangements were made for the wife's re-employment by Aetna. There were various pressures on the husband to accept the transfer, chief of which was that a refusal would have ruined any chance of future advancement and another was the displacement of family living conditions. There were also pressures on him to decline the transfer, chief of which was the necessity to sell his Kansas City home and to locate a home in which to live at his transferred location.

He made his first trip to Springfield on May 23, 1960 to interview Al Chunis, whom he was succeeding, the General Manager, and the other employees with whom he would be working at the Springfield office. At this time he made inquiries concerning new living quarters. He returned to Kansas City where it was determined that his date for the Springfield assignment was to be July 1, 1960. He next returned to Springfield on June 20, 1960, when he entered on his new duties. At this time he commenced looking for a place to live and on July 9, 1960 signed a lease to commence August 1, 1960. Prior to the execution of the lease, the wife came to Springfield to inspect two houses that were under consideration, and she selected the one at 2835 South Lincoln, which was subsequently leased and to which their furniture was moved from Kansas City. The premises were not available before August 1, 1960, because the owner could not surrender possession earlier.

On June 27 of the same year the husband received a phone call concerning the sale of the Kansas City house from a real estate agent who asked that he take a price slightly below the asking price. He confirmed the lower price by wire. The expense of this wire among others, is part of the expense claimed in this suit. The husband made trips from Springfield to Kansas City on two weekends to make final arrangements for the sale of his Kansas City home, and for the purpose of bringing personal property to Springfield. He also closed out bank accounts. It was during these two trips that all Kansas City ties were severed.

Between June 19th and August 1st, 1960, the transition period between job locations, he incurred certain expenses totaling $446.00,[1] for which his employer, Aetna, reimbursed him. Aetna, because of the nationwide nature of its business, has a defined program for reimbursement to its employees of expenses incurred in job transfers, and has printed instructions covering these

1. The itemized expense account for the week of June 19th through June 25th includes the following items: motel room expense, $24.00; reimbursement to friend for use of apartment, $12.00; meals, $30.15; telephone confirming motel reservation, $1.50; total amount, $67.65. For the week of June 26th through July 1st includes $16.00 reimbursement to friend for use of apartment for four days; meals, $18.00; telegram to Kansas City confirming sale of house, $1.38; newspaper ad to rent house, $10.73; dinner and entertainment for departing auditor, A. P. Chunis, $7.00; laundry, $2.60; and cleaning, $0.80; total amount, $57.31. For the week of July 5th through July 9th includes motel room expense, $28.00; meal expense, $23.75; and during the same period for the wife's expense trip from Kansas City to Springfield to inspect the contemplated house for living quarters in Springfield; railroad travel expense, $59.18; taxi fare, $1.25; motel room for two days, $10.00; and meals, $12.65; total amount, $134.83; for the period of July 10th through July 16th includes motel expense, $24.00; meal expense, $21.40; telephone expense, $0.80; laundry, $6.56; and cleaning, $4.40; total amount, $57.16; for the period of July 17th through July 23rd includes motel room expense, $42.00; meal expense, $31.95; cleaning expense, $1.60; total amount, $75.55 and for the period of July 24th through August 1, includes motel room, $20.50; meal expense, $24.80; board of dog and cat, $3.50; bring title to date, $50.00; revenue stamp, $3.30; total amount, $102.10. The totals for the entire period amounted to $494.60 from which the Aetna disallowed $41.77 as excessive under its rules, leaving an allowable expense claim of $452.83, but the parties have agreed upon $446.00 for the purposes of this action.

expenses. The company recognizes that employees who are asked to transfer suffer financial loss because of traveling and duplicated living expenses. The employee is required to submit an itemized expense account. The husband taxpayer submitted his expense account to Aetna, and was paid the above amount. This allowance is limited to $50.00 for a seven-day week. The taxpayers, at the time of filing their 1960 tax return, did not include this allowance as income. The taxpayers spent more than the $446.00 reimbursed them in making this move at Aetna's request and direction. Taxpayer's overall financial condition was not improved by virtue of this $446.00 payment. This move was, in a number of ways, an expensive one for the taxpayers. They had to sell their Kansas City house on which they were repaying a mortgage at a cost to them of $835.00 for real estate selling commissions. They had to pay July interest amounting to $51.38 covering the period of the move from Kansas City, Missouri to Springfield, Illinois; they had to pay one-seventh of the State and County Taxes for the month of July amounting to $13.25; they had to pay one-seventh of the city and park taxes for the month of July amounting to $3.26. Revenue stamps on the deed of conveyance of their property amounted to $3.50, and they paid a title policy fee of $77.85.

All of these unreimbursed expenses were occasioned by the move. In addition, the wife had a salary loss of $775.00, and the laundry could no longer be done as in Kansas City by the wife's mother at no cost. Thus, this move was an expensive one to taxpayers, without reimbursement for some of the items.

The Director of Internal Revenue, on audit of taxpayers' return, added the reimbursed expenses of $446.00 to gross income, and assessed an additional tax amount to $103.00.[2] This amount was paid under protest, a claim for refund was filed, and was denied by the Government.

The following provisions of the Internal Revenue Code are pertinent to the decision of this case:

"§ 61. Gross income defined

"(a) General definition.—Except as provided in this sub-titled, gross income means all income from whatever source derived, including (but not limited to) the following items:

"(1) Compensation for services, including fees, commissions, and similar items: * * *"

"§ 62. Adjusted gross income defined

"For purposes of this subtitle, the term 'adjusted gross income' means, in the case of an individual, gross

2. The above sum of $446.00 was held to be reportable as addition to gross income by the District Director in the following interpretation of the rulings and the statute:

"Mr. England, an employee of the Aetna Casualty Company, was transferred by this employer from Kansas City, Missouri, to Springfield, Illinois. The cost of moving his household goods was paid by the employer, and travel expenses of Mr. England and his family were either paid by the employer directly or reimbursed to Mr. England.

"In addition to the travel and moving expense, the employer reimbursed Mr. England for certain living expenses while he was in Springfield, and his family was still in Kansas City. Such reimbursements, mostly for a motel, room and meals, totalled $446.00. * * *

"2(b) Reimbursements for living expenses.

"The facts regarding this issue are included in Item 2(a) above. Revenue Ruling 54–429, supra, also provides 'amounts received as allowances or reimbursements for meals and lodging of the employee and his family while waiting permanent quarters at the new post of duty are includible in gross income of the employee'.

"Therefore, it is held that the reimbursements of living expenses in the total amount of $446.00 as represents income to Mr. England, taxable under Section 61 of the 1954 Internal Revenue Code. It is further held that no part of the $446.00 may be deducted by the taxpayer under authority of Section 262 of the 1954 Internal Revenue Code."

income minus the following deductions: * * *

"(2) Trade and business deductions of employees.—

"(A) Reimbursed expenses.—The deductions allowed by part VI (sec. 161 and following) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer.

"(B) Expenses for travel away from home.—The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

"(C) Transportation expenses.— The deductions allowed by part VI (sec. 161 and following) which consist of expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee. * * *"

"§ 63. Taxable income defined

"(a) General rule.—Except as provided in subsection (b), for purposes of this subtitle the term 'taxable income' means gross income, minus the deductions allowed by this chapter, other than the standard deduction allowed by part IV (sec. 141 and following).

"(b) [Not applicable.]"

"§ 161. Allowance of deductions

"In computing taxable income under section 63(a), there shall be allowed as deductions the items specified in this part, subject to the exceptions provided in part IX (sec. 261 and following, relating to items not deductible)."

"§ 162. Trade or business expenses

"(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

"(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

"(2) travelling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business;"

"§ 211. Allowance of deductions

"In computing taxable income under section 63(a), there shall be allowed as deductions the items specified in this part, subject to the exceptions provided in part IX (section 261 and following, relating to items not deductible)."

"§ 261. General rule for disallowance of deductions

"In computing taxable income no deduction shall in any case be allowed in respect of the items specified in this part."

"§ 262. Personal, living, and family expenses

"Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses."

The inquiry is twofold: First, was this payment an addition to gross income under Sec. 61, and, secondly, if so, could it be deducted in view of the injunction of Sec. 262 which forbids a deduction for "personal, living, or family expenses"?

Under Section 61, gross income is defined as "all income from whatever source derived, including (but not limited to) the following items:

"(1) Compensation for services, including fees, commissions and similar items."

The Government, in its argument, says "that it should be clear that the amounts involved herein represent gross income within the meaning of Sec. 61 of the Internal Revenue Code of 1954." It argues that gross income means all income from

whatever source derived, and includes all kinds of compensation for services and further argues that this is an instance of undeniable accession to wealth clearly realized, and over which these taxpayers have complete dominion. These statements, while true in a general way, cannot be applied to the facts adduced by the evidence to include this reimbursement in the taxpayers' gross income under Sec. 61. This record shows that rather than an increase in wealth, the taxpayers in fact saw their financial situation worsened in carrying out the direct request of the husband's employer to make the move from Kansas City to Springfield. It is clear that financially they are worse off for having made the transfer than had they remained in the employ of Aetna in Kansas City, in so far as their immediate fortune is concerned. This payment cannot be considered income earned from an actual personal service. The evidence shows a detriment to wealth. Section 61 says that gross income means all income from whatever source derived including, but not limited to compensation for services, including fees, commissions and similar items. Nowhere does Sec. 61 say that reimbursed extraordinary expenses directly related to a taxpayer's job, occurring by reason of a directed move by a superior to take another job in a different office of a vast enterprise, are income. In this temporary period of relocation, this money was not paid by way of reimbursement for services actually rendered. The employer's rules definitely state that these payments are made only because employees otherwise suffer a financial loss because of traveling and duplicated living expense arising from a transfer. They limit an employee's reimbursement to his actual expenses which are not, however, to exceed $50.00 weekly.[3] The evidence here shows that, in fact, the amounts expended for the items involved in the reimbursement was actually greater than the allowance, without even taking into consideration the $835.00 paid by the taxpayers for real estate sales commissions and the other items they paid such as taxes and interest noted above, all of which decreased their accumulated wealth. The taxpayers' net worth for the taxable year 1960 shows an actual reduction rather than an accession to wealth as claimed by the Defendant.

It is clear that the intention of the statutes, when the Internal Revenue Code is read as a whole, would exclude the items here in dispute from gross income. The interpretation of the statute argued for by the Government, would have the effect of placing a tax on the plaintiffs for what was in fact an actual loss to them.

The result reached in the case of John E. Cavanagh, 36 T.C. 300, (5/18/61), which involved an analogous fact situation, is equally applicable here. The Government there claimed that a tax was due it for failure on the part of a taxpayer to include $280.00 as living expenses for two weeks for which he was reimbursed by his employer. The $280.00 was held by the Tax Court to be non-compensatory and thus not includible in gross income under Sec. 61. The Court said the expenses were not *normal* expenses of the employee within the meaning of Sec. 262 but that these expenses were *extraordinary* living expenses attributable to the employer's having transferred him. The Court said:

"There is no provision of the Internal Revenue Code of 1954 specifically requiring the inclusion in gross income of such payments as those here involved nor is there any provision specifically providing for the exclusion or deduction thereof. There is, however, a ruling by respondent with respect to the exclusion from gross income of transportation expenses paid by an employer to or in behalf of an employee where such transportation is required for the convenience of the employer, Revenue Ruling 54–429, C.B. 1954–2, 53,

---

3. Employer's instructions are contained in the Appendix to this Opinion.

wherein respondent has ruled, in part, as follows:

"Accordingly, it is concluded that (1) amounts received by an employee from his employer representing allowances or reimbursements for moving himself, his immediate family, household goods and personal effects, in case of a transfer in the interest of his employer, from one official station to another for permanent duty, do not represent compensation within the meaning of Section 22(a) of the Code, and are not includible in the gross income of the employee if the total amount of the reimbursement or allowance is expended for such purposes * * *.

"With the exception hereinafter discussed, we think the above ruling is sound and has persuasive effect here."

"With respect to the $280.00 reimbursement to petitioner of his excess cost for the food and lodging of his family while his household effects were in transit, the following language from the above-cited ruling is claimed by respondent to prevent the exclusion thereof from income:

"Amounts received as allowances or reimbursements for meals and lodging of the employee and his family while awaiting permanent quarters at the new post of duty are includible in gross income of the employee. (Rev.Ruling 54–429, supra, 54.)

"We agree that to the extent such reimbursements defray the ordinary and necessary food and lodging costs of an employee they represent payment of an *employee's* living expense and are income to him, but to the extent such reimbursements defray only reasonable and necessary extraordinary food and lodging expense required to be incurred by the employer, they represent repayment to the employee of an amount he has first paid for and in behalf of his employer and do not constitute income to him. They are the employer's costs, not the employee's. To the extent the above ruling would require the inclusion in income of reimbursement for such extraordinary *food and lodging* costs, it is not a correct interpretation of Section 22(a) or Section 24(a) of the 1939 Code or Sections 61(a) and 262 of the 1954 Code. The prohibition against the deduction of personal living expenses has reference only to such expenses as are ultimately chargeable to the taxpayer. It has no applicability to such expenses properly chargeable to another which the taxpayer pays and for which he is reimbursed."

Likewise, in the instant case, the expenses here in question were of an extraordinary nature required to be incurred by the employer and repaid by it. Such expenses were the employer's costs and not the employees.

The tax Court has recently cited its decision in the Cavanagh case with approval. Walter H. Mendel, 41 T.C. 32, (October 10, 1963).

If it is conceded (and the Court finds to the contrary) that this reimbursement should be included in gross income under Section 61, the Government then argues that no deduction can be taken for these reimbursed expenses because of the provisions of Section 262. This section provides that, except as otherwise provided, no deduction shall be allowed for "personal, living, or family expenses." In our view of the evidence, these expenses, which were reimbursed to the taxpayers to prevent them from sustaining further economic loss because of the duplication of living expenses during the transition period, were not non-deductible "personal, living, or family expenses." The facts before the Court show that these moving expenses were incurred while the husband was away from home in the pursuit of his trade or business and were incurred in connection therewith.

The disallowance of Section 262 is not in all events and such expenses are allowable if otherwise provided for. In our view, such an allowance is provided by Section 62(2) (A).[4] This section permits employees a deduction from gross income of certain reimbursed amounts if these amounts (1) are allowable under Part VI (Sections 161–182) of subchapter B of the Internal Revenue Code (2) were paid in connection with the taxpayer's performance of services as an employee, and (3) were paid under a reimbursement or other expenses allowance with his employer. We think that the facts found here show that all three of these tests are met. There is no question that these items were reimbursed by the husband's employer under a reimbursement arrangement with his employer. Since these reimbursed expenses arose out of the transfer of the husband from one office of his employer to another, the necessary connection with the performance of services is present. Finally, we hold that these expenses would be deductible under Section 162(a) as an ordinary and necessary expense in carrying on the husband's trade or business of performing services for Aetna as an employee. While we would characterize these expenses as traveling expenses within the meaning of Section 162(a) (2), if that characterization is incorrect, we feel that these expenses would still be ordinary and necessary under the broad allowance of Section 162(a). The requirements of Section 62(2) (A) are thus satisfied such that Section 262 has no application to the facts of this case.

That these expenses are of a kind which may be deducted under Sec. 162(a) is clearly indicated by the case of Walter M. Mendel, op. cit., which allowed a deduction for the unreimbursed portion of certain moving expenses. Although the items of expense involved in that case differ from those in the present case, the Tax Court clearly indicated that all expenses incidental to a tax-payer's move made at the request of and for the benefit of his employer are deductible if necessary to accomplish the move. Likewise, in this case a fair construction of the facts show that the transfer of the taxpayers was at the request of and for the benefit of the employer, who needed a replacement for auditor Chunis who for personal reasons had requested an immediate transfer to Boston, and the transfer was accepted by Plaintiff, Kenneth D. England, for the benefit of his employer rather than himself. It was contended in that case that the expense of moving the taxpayer's wife and household effects were personal expenses and not business expenses. The Court reaffirmed the Cavanagh case, supra, and said:

"If amounts expended by a taxpayer in moving from one permanent post of duty to another are not personal expenses, they are for the purpose of the taxpayer's business as an employee since the cause of the move is business requirements. Ordinary and necessary business expenses are deductible by an employee who itemized his deductions on his income tax return * * *."

"The clear inference from our holding in John E. Cavanagh, supra, is that the entire amount of the expenses paid by an employee in moving from one permanent duty station to another is deductible to the extent that the amount expended is ordinary and necessary to accomplish the move and that this may be accomplished either by not including the reimbursed amount in income or by including the reimbursed amount in income and deducting the total amount expended. In the instant case, it appears from the record that petitioner has not included the $316, which he received from the Veterans Administration as reimbursement for his moving expenses in his 1957 income as reported."

---

4. Section 62(2) (B) which might otherwise be applicable does not apply here since that section does not apply to reimbursed expenses.

Accordingly, the facts as above set out are found to be the facts in this case, and the law as hereinabove set out are the conclusions of law, and accordingly are hereby adopted as the findings of fact and conclusions of law, and under them judgment is ordered for the plaintiff in the full amount as prayed with interest, and the final judgment figures to be entered are to be determined by the parties hereto.

APPENDIX INSTRUCTIONS OF AETNA CASUALTY AND SURETY COMPANY TO EMPLOYEES MOVED AT COMPANY'S EXPENSE

It is the company's intent that employees, who are asked to transfer, not suffer a financial loss because of traveling and duplicated living expenses. Correspondingly, it is expected that any such employee will give full consideration to the company's interests and arrange his affairs so as to keep expenses incurred by a transfer to a reasonable minimum.

The following instructions, contained in paragraphs 1 through 6, apply only to married men, or single men who are the head of a household:

1. It is expected that a transferred employee, when reporting to the new location, will not bring his family with him unless prior permanent or semi-permanent (not hotel) accommodations have been arranged.

2. He may spend not more than one week at a hotel after which time it is expected that he will rent a room on a reasonable weekly basis.

3. After not more than one week at a hotel and until he brings his family to the new location, he will be allowed to submit expense accounts for out-of-pocket expense not to exceed $50 per seven day week. This is not a flat allowance and it must be itemized. This allowance includes room, meals, laundry, etc. Also, if there is a weekly trip

home (par. B9A) the cost must be included under the $50. allowance. This allowance will not be continued beyond 90 days from the date of reporting to the new location without prior approval of the H.O. Department which arranged the transfer.

4. If he owns his home in the old location, he should arrange to place it on the market for sale. It will probably not be possible for him to move his family to the new location until his home in the old location has been sold. However, he should begin looking over the housing situation in the new location so that when his home in the old location is sold he will have a fairly good knowledge of conditions in the new location.

5. After he has investigated the housing market in the new location, he probably will want his wife to come for a few days to look at specific properties and the cost of this will be at company expense. It is expected that she would not have to make more than one trip to the new location before moving. In any event, only one inspection trip will be reimbursible under this program.

6. Since he owns his home in the old location, he may want to buy again in his new location. Or, if suitable rental accommodations can be found, he may prefer to rent for a while before buying. In any event, expense reimbursement will cease as soon as he moves his family to permanent quarters in the new location, or within 90 days, whichever first occurs. It may be necessary to have his family stay at a hotel for a day or two after arrival in the new location; but this should be kept to a minimum.

*NOTE:* In the event the transferee does *not* own his home the fol-

lowing instructions supersede paragraphs 4, 5 and 6.

As soon as possible after arrival in the new location he should begin looking for a place to live. After he has investigated the housing situation he will probably want his wife to come to the new location to look at specific properties, and the cost of this will be at company expense. It is expected that she would not have to make more than one trip to the new location before moving. In any event only one inspection trip will be reimbursible under this program.

Expense reimbursement will cease as soon as he moves his family to permanent quarters in the new location. It may be necessary to have his family stay at a hotel for a day or two after arrival in the new location, but this should be kept to a minimum.

7. In the case of a single man, not head of a household, living costs at the new location will be paid for a period not to exceed one week during which period the employee is expected to make permanent housing arrangements, after which expense reimbursement will cease.

8. The company will reimburse employees for transportation costs incurred for transfer from one location to another as follows:

   A. If public transportation is necessary, reimbursement will include charges for fares on plane, train or bus, for the most direct route. Reasonable expenses customarily associated with travel, such as meals enroute, tips, cabs or limousines will also be reimbursed.

   B. If an employee uses his own car as the means of transportation the company will permit mileage allowance at the rate currently in force for the most direct route. In addition, reasonable expenses enroute such as hotels, parking, tolls, meals and tips will be reimbursed.

   C. Unless instructed to do otherwise employees who have a company leased car assigned to them should use this car as a means of transportation when transferred. Expense reimbursement will be in the same manner as any other trip made for business purposes. Miles driven beyond the most direct route will be considered as personal miles.

   D. If a transferred employee has more than one car in his family and they are owned by him or his family, the company will permit mileage allowance at the rate currently in force for the most direct route for all cars. Employees in this category should make use of the cars so as to avoid any necessity of using other means of transportation for moving the family to the new location.

9. It is the company's desire when men are being transferred to disturb the family relationship as little as possible. Accordingly, married men and single men who are the head of a household may be permitted to return home for week-ends prior to moving their families to the new location subject to the following conditions:

   A. In some cases distances will be relatively short between the new location and the old location. If the cost of transportation home each week-end is equal to or less than the cost of maintaining the transferee over the week-end at the new location he should normally return to his home each week-end. Factors involving leaving time on Fridays and arrival time on Mondays should be considered.

B. In cases not covered under 9A the transferee will be permitted to return home at company expense every three weeks, provided the distance involved is reasonable enough to justify this frequency.

10. An employee will be reimbursed for transportation costs of moving his immediate family to the new location on the same basis as for himself. For the purpose of defining immediate family, it shall include members of the household of his principal residence.